# Ellis, Appellant, *v.* Anderson.

*Insurance—Life insurance—Payment of first premiums—Payment in notes—Waiver—Act of May 3, 1909, P. L. 405.*

1. The action of the general agent of a life insurance company in delivering a policy to the insured, and accepting his interest bearing notes for the amount of the first premium, constitutes a waiver of the provisions of the policy requiring the payment of the first premium in advance.

2. A policy of life insurance provided that "all payment of premiums shall be payable in advance. . . . The failure to pay any of the first three premiums, or installments thereof shall avoid and annul this policy." The policy stated the amount to be paid in case of the death of the insured thus: "Five thousand dollars less the unpaid balance of the current year's premium, if any, and any other indebtedness on the policy." *Held*, that the latter provision indicated that it was in the contemplation of the parties, that the policy might still be in full force even though the current year's premium had not been fully paid.

3. The Act of May 3, 1909, P. L. 405, was a penal statute, and must be construed strictly. The statute does not enact that all insurance premiums must be paid in cash, nor forbid the extension of credit for premiums due upon the policies. The intention of the act was to make it unlawful for insurance companies to give rebates out of premiums, or to agree to pay under a policy any dividends more than the policy specified, or to give to any assured anything of value not specified in his policy. It did not make it unlawful for an insurance company to accept upon the issuing of the policy the note of the assured for the full amount of the premium with interest from the date thereof at the rate fixed by law, in the absence of any suggestion that the maker of the note was not financially responsible, or of any understanding or agreement that the note should not be paid in full with interest.

4. Where an interest bearing note is accepted by an insurance company for the premium upon a policy, the agreement to pay interest is a full legal consideration for the credit extended to the assured for the amount of the premium. The transaction does not vary the terms of the policy, and does not constitute a violation of the first paragraph of the Act of May 3, 1909, P. L. 405.

Argued Oct. 18, 1911. Appeal, No. 151, Oct. T., 1911, by plaintiff, from order of C. P. No. 3, Phila. Co., Dec. T., 1910, No. 4,299, discharging rule for judgment for want of a sufficient affidavit of defense in case of E. R. Ellis v.

James B. Anderson. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Reversed.

Assumpsit on two promissory notes.

The facts are stated in the opinion of the Superior Court.

The court in an opinion by DAVIS, J., discharged the rule for judgment for want of a sufficient affidavit of defense.

*Error assigned* was order discharging rule for judgment for want of a sufficient affidavit of defense.

*Ira J. Williams,* of *Simpson, Brown & Williams,* and *Robert Ramsey,* of *Maxwell & Ramsey,* for appellant.—An insured is not obliged to pay a premium directly to the company in cash. If the company charges the policy to its agent, who chooses to deliver same and extend credit to the insured, the policy is valid in the hands of the insured: Allebach v. Hunsicker, 132 Pa. 349; Snyder v. Ins. Co., 202 Pa. 161; Elkins v. Ins. Co., 113 Pa. 386; Continental Life Ins. Co. v. Ashcraft, 18 W. N. C. 97.

If the insurance company accept a promissory note of the assured it must, in the absence of any express agreement to the contrary, be considered as payment of the premium as contemplated in a condition contained in the policy that it should not be valid or binding until the first premium was paid to the company: New York Life Ins. Co. v. McGowan, 18 Kan. 300; Union Cent. Life Ins. Co. v. Taggart, 55 Minn. 95 (56 N. W. Repr. 579); Carson v. Ins. Co., 43 N. J. Law, 300.

The policy having been in force and appellee received the benefit of protection thereunder, appellee cannot be permitted to set up his own alleged wrongdoing to escape liability: Wright v. Pipe Line Co., 101 Pa. 204; Laun v. Pacific Mut. Life Ins. Co., 111 N. W. Repr. 660; Interstate Life Assurance Co. v. Dalton, 165 Fed. Repr. 176.

The mere taking of an interest bearing note in payment of a premium does not constitute a discrimination, the

interest paid being the full legal equivalent of the use of the money. The insurance department has uniformly upheld the taking of notes in payment of premiums, and this contemporaneous construction is of persuasive force: U. S. v. Ry. Co., 148 U. S. 562 (13 Sup. Ct. Repr. 562); Com. v. Mann, 168 Pa. 290.

Penal statutes are those imposing liability not contemplated by the common law, and are to be strictly construed: Com. v. Giltinan, 64 Pa. 100; Schott v. Harvey, 105 Pa. 222; Keely v. O'Conner, 106 Pa. 321; Com. v. Krickbaum, 199 Pa. 351.

*George J. Edwards, Jr.,* with him *Howard E. Hannum,* for appellee.—The contract violated public policy; Pittsburg v. Goshorn, 230 Pa. 212; Com. v. Vrooman, 164 Pa. 306; Jennings v. Morris, 211 Pa. 600; Gaw v. Bennett, 153 Pa. 247; Mitchell v. Smith, 1 Binney, 110; Weed v. Cuming, 12 Pa. Superior Ct. 412; Equitable Life Assurance Soc. v. Wetherill, 127 Fed. Repr. 947; Heffron v. Daly, 133 Mich. 613 (95 N. W. Repr. 714); State Life Ins. Co. v. Strong, 127 Mich. 346 (86 N. W. Repr. 825).

Until the premium was actually paid in cash the policy was unenforceable in the event of Anderson's death: Marland v. Royal Insurance Co., 71 Pa. 393; Lantz v. Vermont Life Ins. Co., 139 Pa. 546; Brady v. Northwestern Masonic Aid Assn., 190 Pa. 595.

As the policy was never in force, it follows there was no consideration: Campbell Printing Press & Mfg. Co. v. Hickok, 140 Pa. 290.

OPINION BY PORTER, J., March 1, 1912:

The plaintiff brought this action of assumpsit to recover the amount of two promissory notes made payable to his order by the defendant. The defendant filed an affidavit of defense. which the court below held to be sufficient and discharged a rule for judgment, from which order the plaintiff appeals. The affidavit of defense admitted the execution of the notes, stating that they were

renewals of notes previously given, the original notes having been executed and delivered by defendant to plaintiff at the time of the delivery to the former of two policies of insurance upon his life; that plaintiff was the agent of the Union Central Life Insurance Co. of Cincinnati, Ohio, which was duly authorized and engaged in doing business in Pennsylvania, and had agreed that if defendant would take the insurance the plaintiff would arrange to have said company take his notes at four months for the first annual premium named in the policy and that said notes if not paid at maturity would be renewed in whole or in part, and that the agreement as made was carried into effect. The policies were issued by the insurance company and were delivered by the plaintiff, as the agent of the company, to this defendant, who thereupon made and delivered to the plaintiff his notes, payable to the order of the plaintiff, for the amount of the first premium, at four months, with interest from date. When those notes became due the defendant paid the interest on them to that date and gave his notes for the full amount of the principal payable to the order of plaintiff in four months, with interest from date. When these renewal notes became due, on October 13, 1910, the defendant again paid the interest and again renewed the principal, giving second renewal notes, payable three months after the date thereof, with interest from the date thereof, and when these notes, upon which this action is founded, became due, the defendant declined to pay them.

The defendant alleged two distinct grounds of defense, one being that the contract involved a violation of the statutes of Pennsylvania and the other based upon the assertion that, under the covenants of the policy, the insurance company never assumed any liability, and the consideration for the notes failed. We will, for convenience, first consider that branch of the allegation of defense based upon the covenants of the policy. The particular provision of the policy upon which the defendant relies to support his contention that the policy never went into

effect is quoted in the affidavit of defense, viz.: "Payment of premiums. That all premiums shall be payable in advance, either at the home office, or to an authorized agent of the company upon delivery of a receipt signed by the president or secretary, and countersigned by said agent. The failure to pay any of the first three years' premiums, or installments thereof, shall avoid and annul this policy without notice to the insured or beneficiary, or any action on the part of the company." The defendant attached to his affidavit copies of the policies of insurance. The policies do not require that all or any premiums shall be paid in cash. Each of the two policies was for $5,000 and stated the amount to be paid, in case of the death of this defendant, thus: "Five thousand dollars, payable, less the unpaid balance of the current year's premium, if any, and any other indebtedness on the policy, at its home office in Cincinnati." This provision of the policy clearly indicated that it was in the contemplation of the parties that the policy might still be in full force even though the current year's premium had not been fully paid. The affidavit of defense and exhibits thereto attached disclosed that this plaintiff, the person who made the agreement that the notes of this defendant would be accepted for the payment of the first premium upon the policies, was the general agent of the insurance company issuing those policies. The question of the liability of this insurance company upon the policies which this defendant held for almost a year paying only the interest upon the premium, cannot, so far as the mere covenants of the policy are concerned, be considered an open one, under the facts asserted in this affidavit of defense. That question has been definitely settled adversely to the contention of this defendant by the decision of the Supreme Court in Snyder v. Nederland Life Insurance Co., 202 Pa. 161. "A life insurance company may waive a stipulation, made solely for its protection, that no liability shall attach until the first premium is actually paid to it, or its authorized agent, and its general agent may bind it

in this regard." When the plaintiff, as the general agent of the insurance company, delivered the policies to the defendant. and accepted his interest bearing notes for the amount of the first premium, this constituted a waiver of the provision of the policy requiring the payment of the first premium in advance. The consideration for the notes of the defendant did not fail because of any provisions contained in the policies of insurance of which he has had the advantage.

The other ground of defense alleged is based on the provisions of the Act of May 3, 1909, P. L. 405. The defendant had in his original affidavit relied upon the provisions of the Act of July 2, 1895, P. L. 430, which statute was quoted at length in that affidavit; and following such quotation he thus states his position: "I aver that the said Union Central Life Insurance Company, and its agent, E. R. Ellis, made a distinction and discrimination in my favor over other insurants of the same class and equal expectations of life, in that said agent and said company accepted said notes and the renewals thereof on payment of the respective premiums in said policies mentioned, and exact from other applicants for said insurance payment of such premiums in cash. I am advised by counsel, and therefore, aver that said policies, said oral agreement hereinbefore recited, and the said two notes and all renewals thereof, including the two notes in suit, given in pursuance thereof, are in violation of the act of assembly above quoted, and that neither the plaintiff nor the said Union Central Life Insurance Co. may, by reason thereof, recover upon said notes." The defendant subsequently filed a supplemental affidavit of defense stating that the act of July 2, 1895, had been supplanted and expressly repealed by the Act of May 3, 1909, P. L. 405, and quoted in full the first section of the statute last mentioned. He in this affidavit averred that the facts in his original affidavit of defense set forth, constituted a violation of the act of 1909 and that the plaintiff was not entitled to recover. The material averments of the affi-

davits, so far as they have any bearing upon the effect of the act of 1909, may be briefly thus stated. The defendant applied to the insurance company for two policies upon his life and the plaintiff, as agent of the company, agreed to accept in payment of the first premiums the interest bearing notes of the defendant. In pursuance of this agreement the policies were duly delivered to the defendant and he gave to the plaintiff his notes, bearing interest from the date thereof, for the full amount of the premiums for the first year, in payment of said premiums. The defendant paid the interest on the notes, having renewed them twice, and stood in the position of asserting the validity of the policies which he held until eleven months of the first year of the policies had expired, when, another premium being almost due, he repudiated his notes and asserted the policies of insurance to be invalid, for the reason that, as stated in his affidavit: "Said policy contracts of insurance do not set forth in any manner as a condition thereof the making, delivery or acceptance of said notes in payment of the respective premiums either by Union Central Life Insurance Company or E. R. Ellis, its agent, in procuring said insurance."

The contention of the defendant is that the acceptance of interest bearing notes in payment of the premium for the first year, when the policy required the premium to be paid in advance and did not set forth the acceptance of the notes in payment thereof, constituted a violation of the act of May 3, 1909, in that it was the giving of an inducement to an insurant of a valuable consideration not specified in the policy, and, also, that it was a discrimination in favor of this defendant as against other insurants of the same class. The defendant concedes the logical consequences of his contention to be that he and the plaintiff were guilty of a misdemeanor, that the policies of insurance upon his life were void from the day they were issued, and that no action could be maintained either upon the policies or the notes which he gave in payment of the premium. We have here to deal only with the legal-

ity of this defense, not with its honesty. The Act of May 3, 1909, P. L. 405, made but little change in the law with regard to the question here involved in so far as it applied to life insurance companies. That statute repealed the Acts of May 7, 1889, P. L. 116, and July 2, 1895, P. L. 430, which had applied to life insurance companies only and which, as to such companies, had contained all the provisions embodied in the act of 1909 which the defendant asserts were in this transaction violated. Those earlier statutes were in force when Snyder v. Insurance Co., supra, was decided, and the policy in that case required the first premium to be paid in advance; the agent of the insurance company had delivered the policy to the insured upon an agreement that the first premium should be paid in the future, which fact was not stated in the policy, and if the contention of this defendant is sound the insurance company ought not to have been held liable upon the policy, but the Supreme Court affirmed a judgment against the company. The act of 1909 did work a decided change in the general insurance law, in that some of the regulations which had formerly applied to life insurance companies only were extended to all insurance companies, whether engaged in the business of life, fire, marine or accident insurance. The first paragraph of sec. 1 of the statute has this general application, it forbids any insurance company, or any representative thereof giving, "as an inducement to insurants," or any person knowingly receiving, "as such inducement," "any rebate of premiums payable on the policy, or any special favor or advantage in the dividends or other benefits to accrue thereon, or any paid employment or contract for services of any kind, or any special advantage in date of policy or age of issue, or any valuable consideration or inducement whatever, not specified in the policy contract of insurance." There is in the present case no allegation that there was any rebate of the premium, or special advantage in the dividends, or contract of employment, or any special advantage in date of policy or age of issue.

The contention is that the acceptance of the notes for the first premiums must be construed to be the giving of a "valuable consideration not specified in the policy." It may here be observed that the affidavit does not state that the acceptance of his interest bearing notes was offered or allowed "as an inducement to insurants." The court is asked to infer that it was given as such inducement from the mere fact that the company accepted the interest bearing notes for the full amount of the premium. Those interest bearing notes so far as appears from this affidavit were worth their full face value, and there is no suggestion that there was any understanding that they were not to be paid in full. The Act of May 3, 1909, P. L. 405, is a penal statute and must be construed strictly. The statute does not enact. that all insurance premiums must be paid in cash, nor forbid the extension of credit for premiums due upon policies. The mere acceptance of an interest bearing note for the first premium on the policy did not of itself involve a violation of the statute. The court could not say, as matter of law, that this was a giving of a valuable consideration "as inducement to insurants." The transaction being of this character it was clearly necessary for the defendant to distinctly and unequivocally state, if he wished to base a defense upon the first paragraph of the act of 1909, that when the plaintiff accepted his notes for the premium, he did it "as an inducement to insurants." The affidavit of defense might properly be held insufficient for this reason alone, but we are not disposed to place our decision upon this narrow ground.

The importance of the question, raised by this affidavit of defense, not only to insurance companies but to all who have occasion to take out an insurance policy of any kind or nature, is not likely to be overestimated. If the contention of the appellee is correct, the man who takes out an insurance upon his life for the benefit of his family, and the merchant who takes out a fire insurance policy upon his stock of goods, must consider with microscopic care every covenant in the policy. He must know that

if the policy contains a provision that the premium shall be paid in advance, the company has then no power to waive that provision or to extend any credit to an insurant no matter how responsible; that though the assured give his note for the full amount of the premium, with interest at the lawful rate, the giving of the note and the acceptance of the policy is a misdemeanor, under the law of Pennsylvania, and both note and policy are void. If the acceptance of an interest bearing note from a financially responsible assured, for the full amount of the premium, is the giving of a "valuable consideration not specified in the policy," within the meaning of this statute, it must necessarily follow that an agreement or understanding that any other material covenant of the policy should be waived would be a misdemeanor under the act and would render the policy invalid. If the policy contained a covenant that there should be no recovery upon it in case the title of the assured was other than that of sole and unconditional ownership by title in fee simple, the assured whose property had been destroyed by fire, when he proved that those authorized to represent the insurance company knew that he was not the sole owner but held for himself and others or that his estate was a leasehold and that it was distinctly understood that the policy should cover his real interest in the property, would have merely succeeded in establishing that the policy was written in violation of law and invalid. The result would be, in short, to put it out of the power of an insurance company to waive the benefit of any covenant of the policy or of the assured to assert such waiver. Can this statute be fairly so construed as to indicate an intention of the legislature to cause so great a change in the law?

The prohibitions contained in the first paragraph of the act were aimed at the practice of rebating, or returning to the assured any part of the premium payable on the policy. This paragraph consists of a single sentence, which forbids the giving, as "inducements to insurants"

of certain advantages not specified in the policy.   The
things which are in this sentence specifically enumerated
are such as directly tend to deplete the treasury of the in-
surance company, thus, giving a rebate of the premium,
or a special favor in dividends (manifestly referring to
mutual policies) or employing the assured for pay, or
giving a special advantage in date of policy or age of issue,
which would reduce the amount of premiums required
to be paid.   These are the things specifically forbidden
and each of them would directly take money out of the
treasury of the insurance company.   Having thus for-
bidden certain specific recognized evils of the business, the
statute added a general prohibition of giving "any valuable
consideration or inducement whatever, not specified in the
policy contract of insurance."   This final prohibition was
intended to embrace any form of the evil practice aimed
at which did not fall within any of the classes previously
enumerated.   The whole intention of this paragraph was to
make it unlawful for insurance companies to give rebates
out of premiums, or to agree to pay under a policy, any
dividends, more than the policy specified, or to give to
any assured anything of value not specified in his policy.
This paragraph of the statute did not make it unlawful
for an insurance company to accept, upon the issuing of
the policy, the note of the assured for the full amount
of the premium, with interest from the date thereof at
the rate fixed by law, in the absence of any suggestion that
the maker of the note was not financially responsible, or
of any understanding or agreement that the note should
not be paid in full, with interest.   The law of the state
limits the rate of interest which may be paid for the use
of money, and the rate which shall be paid in case of
delay after payment is due; the interest thus paid is re-
garded as the proper consideration for the use of the
money.   When an interest bearing note is accepted by an
insurance company for the premium upon a policy, the
transaction is in harmony with the covenants of the policy.
If this defendant had paid his notes when they came due,

the insurance company would have had in its treasury the full premium on the policy, with interest thereon to the date of the payment. This being the case it cannot be said that the insurance company had agreed to accept less than the amount of premium named in the policy. The note was in the nature of an investment of so much of the company's funds, upon interest at the legal rate. The agreement of the defendant to pay interest was a full legal consideration for the credit extended him for the amount of the premium. The transaction did not vary the terms of the policy, and did not constitute a violation of the first paragraph of the act of 1909.

The statute, as we have already said, does not require insurance premiums to be paid in advance. The affidavit does not set forth any rule or regulation by which this insurance company was governed which required that all premiums should be paid in cash. In the absence of any such prohibition or regulation this plaintiff and the company which he represented had the discretion ordinarily exercised by those engaged in business to extend credit to persons whom they believed to be financially responsible. They might require those whom they knew to be tricky or whose promissory note they had reason to believe would be valueless, to pay in cash. When the party with whom they were dealing was trustworthy and financially responsible, the acceptance of his interest bearing note for the amount of the premium was a matter in which they might properly exercise discretion. When they did accept such a note, that note did not vary the contract contained in the policy, nor was it a contract of insurance, nor did the transaction involve a discrimination in favor of the policy holder, within the meaning of the second paragraph of the act of 1909. We do not say that the contract might not be held invalid if it appeared that there was an understanding that the note never was to be paid, but that question does not arise in this case. The transaction out of which these notes arose did not, under the facts stated in the affidavit of defense, involve a violation

of the provisions of the act of May 3, 1909, and the affidavit was insufficient to prevent judgment.

The order of the court below is reversed and the record is remitted, with directions to enter judgment against the defendant for such sum as to right and justice may belong, unless other legal or equitable cause be shown to the court below why such judgment should not be so entered.